UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x

| | |
|---|---|
| GEORGE ABELLA, | SECOND AMENDED COMPLAINT |
| *Plaintiff*, | |
| *v*. | 14 Civ. 5282 (SJ)(JO) |
| STEVEN MADDEN, LTD | |
| *Defendants*. | |

-----------------------------------------------------------------------x

Plaintiff George Abella ("Plaintiff"), by his counsel, The Harman Firm, PC, for his Second Amended Complaint against Defendant Steven Madden, Ltd. ("Steve Madden" or "Defendant"), alleges as follows:

## PRELIMINARY STATEMENT

1. In this employment discrimination action, Plaintiff Abella seeks damages and costs for Defendant's willful, improper, and illegal retaliatory termination of his employment, and for damages and costs resulting from Defendant's creation of a discriminatory and hostile work environment in Plaintiff's workplace.

2. This matter arises under the Civil Rights Act of 1866, 42 U.S.C § 1981 and New York City Human Rights Law § 8-107.  Defendant created and fostered a racist, sexist, and homophobic office environment in which Mr. Abella was forced to work.  Upon Mr. Abella reporting this egregious and intolerable conduct to Human Resources, Defendant terminated him in a clear act of retaliation.

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over Plaintiff's claims as Defendant violated Plaintiff's rights under 42 U.S.C. § 1981.

4. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claim brought under New York City law.

5. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) as a substantial part of the events or omissions giving raise to the claims occurred within this District.

## TRIAL BY JURY

6. Plaintiff respectfully requests a trial before a jury.

## PARTIES

7. Plaintiff, at all times relevant hereto, was and is a resident of Queens County, New York.

8. Upon information and belief, Defendant Steven Madden, Ltd. is a corporation organized under the laws of Delaware and headquartered in Queens County, New York.

## STATEMENT OF FACTS

9. In and around September 2013, Defendant hired Plaintiff George Abella as a part-time file clerk in the Human Resources ("HR") department and paid him eleven dollars ($11) an hour.

10. In and around October 2013, Defendant transferred Mr. Abella from the HR department to the International Payments department.

11. Defendant increased Mr. Abella's pay to twelve dollars ($12) an hour.

12. When Mr. Abella began working in the international payments department, he immediately noticed that his supervisor, Ishri Balram, and his co-workers, Karl McKenzie, Nile Graham and Sonya Rametra, regularly used racist, sexist, and homophobic language.

13. Mr. Abella was present for and heard the derogatory language, as he, Mr. Balram, and the other international payments employees all worked together in the same, small office space at Steve Madden.

14. Mr. Abella is Filipino; consequently, his supervisor and co-workers targeted him with racist "jokes" and epithets demeaning Filipinos and other Asians.

15. Mr. Abella's supervisor and co-workers regularly joked about the shape of his eyes, mocked him for not knowing Chinese, suggested that—as a Filipino—he ate dogs, and regularly used racist and derogatory terms such as "chink."

16. Mr. Balram regularly received emails from Chinese vendors and on multiple occasions gave Mr. Abella documents partially written in Chinese, even though he knew that Mr. Abella was Filipino and did not speak any Chinese languages. When Mr. Abella told Mr. Balram that he did not understand the portions of the documents written in Chinese, Mr. Balram embarrassed Mr. Abella in front of the entire department by taunting, "Why did we even hire you if you don't speak Chinese?"

17. Mr. Balram often asked Mr. Abella if he had ever been to Flushing, Queens, which is well known for its Chinese population, tacitly insinuating that Mr. Abella would feel more comfortable amongst Chinese people.

18. In addition to ridiculing Mr. Abella's Asian heritage, Mr. Abella's supervisor and co-workers also "joked" to his face that he looked like a "Mexican," at which time they made racist comments toward him that disparaged Mexicans and other Hispanics.

19. Defendant's employees regularly made repulsive jokes about how Mexican people are "dirty" and called Mr. Abella a dirty Mexican.

20. Defendant's employees repeatedly mocked Mr. Abella, whose first name is George, by insisting that the proper spelling of his name was "Jorge" and calling him "Jorge."

21. Defendant's employees routinely directed racist slurs, such as "wetback" and "spic," at Mr. Abella.

22. In addition to racial abuse, Defendant's employees regularly asserted that Mr. Abella was "homo," "gay," and asked him if he liked "same love." Mr. Abella is not homosexual.

23. Each time the popular song, "Same Love," by the artist "Macklemore" played on the radio, Karl McKenzie badgered Mr. Abella with homophobic comments that Mr. Abella participated in and enjoyed homosexual sex and that Mr. Abella was not a "real man."

24. Karl McKenzie physically harassed Mr. Abella by grabbing the back of Mr. Abella's chair and violently shaking it. He frequently picked on Mr. Abella by threatening, "you scared, boy?"

25. Defendant and Defendant's employees maintained an atmosphere of hostility towards homosexuals by constantly denigrating people and things[1] as "gay."

---

[1] The word "gay" was used with disparaging intent to mean "awkard, stupid, or bad."

4

26. Together with the pervasive homophobia, there was an atmosphere of chauvinism in the office. Defendant's employees referred to females as "ho's," a derogatory term, or "thot," a slang acronym for "that ho over there."

27. Additionally, Karl McKenzie advocated violence against women, stating that men should hit women "to keep them in their place" and that woman enjoyed it.

28. Mr. Balram had violent outbursts where he would kick and punch the filing cabinets and other office furniture.

29. In or around January 2014, despite the hostile work environment Mr. Abella was forced to work in, Mr. Abella received a positive performance review. Mr. Abella received a $0.50 raise in recognition of his excellent performance review.

30. Defendant's employees' ongoing and reprehensible comments and behavior greatly offended Mr. Abella. For five (5) months, Mr. Abella suffered Defendant's harassment in silence for fear of retaliation from Defendant and/or his co-workers.

31. On Thursday, June 26, 2014, Mr. Balram and Mr. Abella had a verbal altercation in the office during which Mr. Balram repeatedly and unnecessarily said to Mr. Abella, "calm down, bro," in an aggressive tone while moving closer to Mr. Abella in a menacing fashion.

32. Mr. Abella was shaken and disturbed. He asked if he could leave early. Mr. Balram answered that he could leave "right now."

33. Mr. Abella logged out and went to the HR department to complain about Mr. Balram, the ongoing hostile work environment in the International Payments department, and how upper management enabled and condoned the discriminatory behavior.

34. Mr. Abella expressed concerns to Defendant's HR representative about the potential retaliation against him for making a complaint. Defendant's HR representative assured Mr. Abella that he would not be retaliated against and encouraged Mr. Abella to detail what had happened with Mr. Balram, as well as Defendant's employees' ongoing, repulsive conduct. Defendant's HR representative stated that others previously had complained to HR of similar behavior about Mr. Balram and Defendant's employees.

35. Mr. Balram witnessed Mr. Abella leave HR. He followed Mr. Abella out of the premises and asked him about his meeting with HR.

36. Mr. Abella told Mr. Balram that he had spoken with HR; he did not describe to Mr. Balram the nature of his discussion with HR.

37. That evening, Mr. Abella received a phone call from Defendant's HR department asking him to take the next day, Friday, off as well, and to "gather himself" over the weekend.

38. On the following Monday, June 30, 2014, Mr. Abella returned to work. Upon entering the building, Defendant's receptionist stopped Mr. Abella and instructed him to go to the HR department. Mr. Abella went to the HR department and had a meeting with Defendant's HR representative.

39. During this meeting, Mr. Abella learned that, after he had made his complaint that prior Thursday (on or about June 26th, 2014), employees from the International Payments department filed complaints with HR alleging that Mr. Abella was a violent person.

40. Mr. Abella had not done anything violent or threatening at any point in his employment with Defendant and denied the allegations made against him during the meeting.

41.     Mr. Abella asserted that the same people who were responsible for the racist, hostile atmosphere that he had originally complained about, Ishri Balram, Karl McKenzie, Nile Graham, and Sonya Rametra, were the same individuals responsible for the subsequent complaints made against him, and he told the HR representative that the complaints against him were made in retaliation for going to HR.

42.     No complaints ever were made against Mr. Abella prior to his complaint to HR on or about June 26, 2014, and he had received a positive performance review a few months prior to this complaint.

43.     Despite the overwhelming evidence that Defendant's employees had fabricated the complaints against Mr. Abella at Mr. Balram's direction, Defendant terminated Mr. Abella's employment immediately.

44.     Defendant did not give Mr. Abella any opportunity to appeal the decision to terminate him, and Mr. Abella's initial complaint was ignored.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
**Defendant Retaliated Against Plaintiff in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981**

45.     Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1-44 with the same force as though separately alleged herein.

46.     The Civil Rights Act of 1866, 42 U.S.C. § 1981, prohibits employers from retaliating against employees for complaining about discriminatory practices.

47.     Defendant retaliated against Plaintiff after he complained about the hostile work environment and discriminatory harassment Defendant fostered.

7

48. Defendant then terminated Plaintiff for opposing Defendant's unlawful discriminatory practices.

49. As a direct and proximate consequence of Defendant's illegal, discriminatory retaliation, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

50. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

## SECOND CAUSE OF ACTION
### Defendant Subjected Plaintiff to a Hostile Work Environment in Violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981

51. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1-50 with the same force as though separately alleged herein.

52. The Civil Rights Act of 1866, 42 U.S.C. § 1981, prohibits employers from allowing a hostile work environment in the their workplaces.

53. Defendant created a hostile work environment with pervasive racist, homophobic, and misogynistic comments and conduct.

54. As a direct and proximate consequence of the illegal hostile work environment caused by Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

55. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### THIRD CAUSE OF ACTION
**Defendant Retaliated Against Plaintiff in Violation of the
New York City Human Rights Law § 8-107**

56. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1-55 with the same force as though separately alleged herein.

57. New York City Human Rights Law § 8-107 prohibits unlawful retaliation in any manner against any person because such person has opposed discriminatory practices.

58. Defendant terminated Plaintiff in retaliation for his opposition to Defendant's unlawful discriminatory practices.

59. As a direct and proximate consequence of Defendant's illegal, discriminatory retaliation, Plaintiff has suffered and continues to suffer, substantial monetary damages, including, but not limited to loss of income, including past and future salary and non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

60. Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

### FOURTH CAUSE OF ACTION
**Defendant Subjected Plaintiff to a Hostile Work Environment in Violation of the
New York City Human Rights Law § 8-107**

61. Plaintiff hereby realleges and incorporates each and every allegation contained in paragraphs 1-60 with the same force as though separately alleged herein.

62. New York City Human Rights Law § 8-107 prohibits unlawful discrimination in any manner against any person because such person has opposed discriminatory practices.

63.     Defendant created a hostile work environment with pervasive racist, homophobic, and misogynistic comments and conduct.

64.     As a direct and proximate consequence of the illegal hostile work environment caused by Defendant's discriminatory conduct, Plaintiff has suffered and continues to suffer, substantial non-monetary damages, including, but not limited to, emotional distress and suffering, all in amounts to be determined at trial.

65.     Plaintiff is entitled to compensatory damages, liquidated damages, costs, attorneys' fees, and any other damages and other compensation that the Court deems appropriate.

## Request for Relief

**WHEREFORE**, Mr. Abella respectfully request the following relief:

A. for the First Claim, actual damages to be determined at trial, but in no event less than $400,000;

B. for the Second Claim, actual damages to be determined at trial, but in no event less than $400,000;

C. for the Third Claim, actual damages to be determined at trial, but in no event less than $400,000;

D. for the Fourth Claim, actual damages to be determined at trial, but in no event less than $400,000;

E. reinstatement;

F. an award of compensatory and punitive damages;

G. pre-judgment and post-judgment interest;

H. attorneys' fees and costs; and

I. such other relief as the Court sees fit to award.

Dated: New York, New York
November 10, 2014

THE HARMAN FIRM, PC

By:   /s/ Walker G. Harman, Jr.
Walker G. Harman, Jr. [WH-8044]
Attorneys for Plaintiff
1776 Broadway, Suite 2030
New York, NY 10019
(212) 425-2600
wharman@theharmanfirm.com